FILED
Aug 09, 2022
03:50 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **DERRICK WILSON,** | ) | **Docket No.: 2021-07-0482** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 53458-2021** |
| **RANDSTAD, INC.,** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **INDEMNITY INS. CO. OF N.A.,** | ) | |
| **Insurer.** | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This Court held an Expedited Hearing on July 28, 2022, where Mr. Wilson requested an order requiring Randstad to offer a panel of physicians to treat his alleged work-related left-shoulder injury. Randstad defended on the grounds of notice and causation. The Court holds that Mr. Wilson is likely to prevail at trial on these issues and orders Randstad to provide a panel of orthopedists.

### History of Claim

Before outlining the events surrounding Mr. Wilson's alleged work-related injury, it is necessary to set out his medical history before working for Randstad.

In February 2009, Mr. Wilson filed a claim against his then-employer also alleging a left-shoulder injury. The authorized physician eventually diagnosed him with left-shoulder impingement syndrome and assigned a one-percent impairment. He also gave Mr. Wilson permanent physical restrictions of no more than occasional lifting overhead with the left shoulder and no lifting more than forty-five pounds overhead or sixty pounds from floor to waist. Mr. Wilson obtained a five-percent impairment from an independent medical examination. He settled that claim with open medical benefits in January 2010.

In 2010, Mr. Wilson stopped working due to multiple health complaints, primarily sarcoidosis, a condition that affects his breathing, and diabetes, although he also treats for chronic low-back pain and severe anxiety. In 2015, he began receiving disability benefits.

1

Mr. Wilson sees Dr. Stephen Collier monthly for maintenance of his health problems.[1]  According to Dr. Collier's December 2020 note, Mr. Wilson suffered not only from sarcoidosis and diabetes, but also chronic low-back pain and a "history of generalized osteoarthritis shoulder pain."

During the February 2021 visit, Dr. Collier noted that Mr. Wilson complained of "chronic low back pain secondary to degenerative disc disease."  Mr. Wilson did not mention shoulder pain, and he did not describe any recent acute injuries or accidents. However, he did say that he had "trouble climbing stairs.  Has to climb a lot of ladders. His job at the factory is very stressful and repetitive, but that is the best he can do right now."  The March record repeats the history given in the February note.

Regarding his employment history after receiving disability, Mr. Wilson testified that while he worked at a couple of factories through temporary employment agencies, he could not remember when he worked for them.  Mr. Wilson did not elaborate on Dr. Collier's notes on his employment, either on direct or cross-examination.

On March 1, 2021, Mr. Wilson applied with Randstad, a temporary employment agency.  In the process, he signed acknowledgements that Randstad prohibited employees from lifting more than fifty pounds, and it required them to immediately report any work injury.

Randstad assigned Mr. Wilson to work at Sonoco, where he began on March 15. Mr. Wilson's job required him to remove cans from an assembly line and place them in boxes.  He did this assignment for thirty minutes and then stacked the boxes on pallets, which required him to occasionally lift the boxes over his head.  Mr. Wilson estimated the boxes weighed between fifty and sixty pounds, but Brittany Bowles of Randstad testified the boxes weighed fewer than thirty pounds.

Mr. Wilson testified that he could not remember the exact date he injured his left shoulder, but it occurred when his shift was short-handed.  He felt a pop in his left shoulder but continued to work, thinking that he might have simply strained it.  He did not report it to his supervisor at the time.  Over the next few weeks, his shoulder pain worsened, and he told his wife that "something wasn't right."  He estimated that the injury occurred a few weeks before his regularly scheduled visit with Dr. Collier, which occurred on June 8.

---

[1] Although Mr. Wilson regularly treated with multiple physicians over the last decade, the only medical records in evidence that preceded his alleged injury were from his previous workers' compensation claim and Dr. Collier's records from December 2020 through March 2021.  Randstad's counsel said she had Dr. Collier's records from 2018, and she asked about Mr. Wilson's failure to respond to her efforts to obtain additional doctors' notes as well as employment records.  However, she did not file a motion to compel discovery.

2

At that visit, Dr. Collier noted that Mr. Wilson was "working at a factory job" and had the "same chronic dull ache and stiffness as before." However, he further observed that Mr. Wilson complained of "more shoulder pain" and recommended an MRI. He diagnosed chronic pain syndrome secondary to degenerative disease and prescribed medication for "left shoulder pain." Mr. Wilson continued to work full-duty and had the MRI on June 30. It revealed a "full thickness, full width tear" with retraction of the supraspinatus tendon.

Mr. Wilson said that the next week, before he knew the MRI results, he told his shift leader, Adriane Ingram, that his shoulder hurt. However, he asked her not to report it because he wanted to give it the weekend to see if it would get better. Ms. Ingram's affidavit differs somewhat. She stated that she saw Mr. Wilson doing shoulder exercises and asked him if he hurt it at work. She claimed he told her that he was not hurt at Sonoco but on a previous job. He told her about the MRI, but he repeated that his problem did not happen at Sonoco.

Ms. Ingram informed her supervisor of their conversation. She said that when Mr. Wilson found out, he confronted her, stating that "he did not want anyone to know that his shoulder was hurting, as it was not work-related."

Randstad also provided the affidavit of Tony Phelps, Sonoco's Production Shift Supervisor. He said that he spoke with Mr. Wilson about his left shoulder, although he could not remember the date. Mr. Wilson did not inform him of any specific work injury; instead, he said his left shoulder was "ok" and he "was fine." He asserted that Mr. Wilson did not report an injury or ask for medical treatment, and he did not attend any meetings with Mr. Wilson or other Sonoco employees about Mr. Wilson's work status.

Mr. Wilson's recollection was quite different. He testified that after speaking with Ms. Ingram, he met with her, Mr. Phelps, and two other Sonoco employees, "Chris" and "Oliver." Mr. Phelps offered to move him to another position, but Mr. Wilson declined because he liked his current job.

Regardless, Brittany Boles, manager for Randstad, texted Mr. Wilson and asked him to come to Randstad's office on July 9. At this meeting, Mr. Wilson filled out several forms stating that he suffered a work-related injury to his left shoulder, although he could not remember the exact date. Ms. Boles testified that he told her he had no idea when it happened. It appears that for the sake of the forms, both Ms. Boles and Mr. Wilson used July 8 or July 9 for the accident date. The incident form also stated that Mr. Wilson said the injury occurred gradually while he was lifting boxes.

After this meeting, Randstad offered Mr. Wilson a panel of physicians. He chose Dr. Gary McBride, whom he saw on July 10. The note stated that Mr. Wilson was suffering from left shoulder pain for at least a month. Dr. McBride did not review the MRI, but Mr.

Wilson told him that it showed a tear. Dr. McBride placed Mr. Wilson on light duty and referred him for orthopedic care.

Before Mr. Wilson could return to work on July 12, Randstad terminated his assignment.

On July 14, he gave a recorded statement to Randstad's carrier. In the statement, Mr. Wilson referred to the time when he and a co-worker were working short-handed as the date when he "felt like [his] arm popped." Randstad did not authorize additional medical care or provide additional employment. It eventually filed a Notice of Denial.

After the denial, Dr. Collier referred Mr. Wilson to orthopedist Jason Hutchison, whom he saw on August 30. Dr. Hutchison diagnosed a full thickness tear of the infraspinatus tendon and recommended surgery.

On September 30, Dr. Hutchison responded to a letter from Mr. Wilson's attorney regarding causation. He said that Mr. Wilson suffered from a significant rotator cuff tear that, in someone Mr. Wilson's age, "generally occurs" with an acute injury. The letter asked whether Mr. Wilson's employment could have aggravated or exacerbated a pre-existing condition. Dr. Hutchison stated that Mr. Wilson did not inform him of a pre-existing condition, but lifting and stacking heavy items "certainly could" cause or aggravate a rotator cuff tear. However, given that he might not know all of Mr. Wilson's history, he reserved the right to change his opinion.

On November 8, Mr. Wilson saw orthopedist Dr. Kenneth Nord for another evaluation. Like Dr. Hutchison, Dr. Nord found a full thickness tear and recommended surgery; however, to date Mr. Wilson has not had his shoulder repaired.

On May 31, 2022, Dr. Hutchison completed a form from Randstad's counsel. On the form, he acknowledged that it appeared from the records sent to him that Mr. Wilson had problems with his shoulder before his alleged work injury. He modified his opinion so that he was "unable to say with a reasonable degree of medical certainty" if the alleged work incident primarily caused Mr. Wilson's rotator cuff tear.

At the hearing, Mr. Wilson attempted to clarify several points. Concerning notice, he explained that he had two reasons for not immediately notifying Sonoco or Randstad of his shoulder problems. First, after he felt the initial pop, he hoped it was just a strain that would improve over time. When the pain worsened over the next few weeks, he brought it to Dr. Collier's attention at his scheduled monthly appointment. Second, Mr. Wilson testified that, upon seeing a co-worker lose his job after reporting an injury, he was afraid he would as well.

As for causation, Mr. Wilson admitted that he did not inform any of the physicians

4

who treated him that he had a workers' compensation claim for his left shoulder in 2009. However, he said the pain was nothing like what he currently suffers, and he knew that his shoulder was not torn in 2009 like it is now.

Finally, Mr. Wilson testified that he continues to suffer from pain and limitations in his left shoulder. Despite his symptoms, he is currently working for Delta Faucets and can do his job, although Delta has prohibited him from any heavy lifting.

**Findings of Fact and Conclusions of Law**

Mr. Wilson must present evidence from which this Court can determine that he is likely to prove at trial that he provided sufficient notice of his alleged work injury and that it primarily arose out of and in the course and scope of his employment with Randstad. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). The Court will address each in turn.

*Notice*

Tennessee Code Annotated section 50-6-201(a) (2021) requires injured employees to provide written notice within fifteen days of the injury, and if they do not, compensation is barred "unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented."

Mr. Wilson did not dispute that he failed to give notice within fifteen days of hearing the pop in his shoulder. Although he could not testify as to the exact date, he believed the pop occurred a few weeks before he saw Dr. Collier on June 8.[2] His MRI occurred on June 30, but he did not notify Randstad of a potential work injury until July 9. Thus, at least six weeks passed from the alleged injury date to Randstad receiving notice.

The question thus becomes whether Mr. Wilson had a "reasonable excuse" for failing to provide notice. Mr. Wilson's situation is like that in *Scruggs v. Amazon.com Services, LLC*, 2022 TN Wrk. Comp. App. Bd. LEXIS 27, at *6-7 (June 27, 2022). In *Scruggs*, the employee injured her knee but felt that it was a temporary strain, like aches and pains she experienced every day, and she believed it would get better. She continued to work daily despite her symptoms. Three weeks later, she suffered another acute event that caused significant pain and swelling. It was only then that she reported the injury. The Appeals Board held that, under the circumstances, the employee had a reasonable excuse for not reporting the original injury within fifteen days. *Id.* at *8.

---

[2] Mr. Scruggs's inability to identify an exact date is not necessarily fatal to his claim. *See Wolfe v. Mayes Mortuary,* No. E2009-00406-WC-R3-WC, 2010 Tenn. LEXIS 91, at *8-9 (Tenn. Workers' Comp. Panel Feb. 17, 2010) (Notice was adequate even though the employee could only identify the injury date as some day in "May or June of 2006.").

Like the employee in *Scruggs*, Mr. Wilson testified that he suffered from daily pain. He initially believed his shoulder pain was no different and would eventually resolve, and he continued to work at full duty. Mr. Wilson's situation differs from *Scruggs,* in that several weeks passed while his symptoms grew more severe. He sought treatment from his family doctor, who ordered an MRI, and he did not give notice until his supervisors forced the issue.

However, Mr. Wilson also explained his delay even after seeing Dr. Collier. He testified that he watched a co-worker get fired after reporting a work injury, and he feared the same would happen to him. It appears his fears were justified, since Sonoco terminated his "assignment" the next business day, and Randstad did not offer any other employment.

Although it is close, the Court holds that Mr. Wilson's excuses for failing to provide notice within fifteen days were reasonable under the circumstances.

However, even if the excuses were not reasonable, Randstad has an additional hurdle before it could prevail on a notice defense—it must show prejudice. Tennessee Code Annotated section 50-6-201(a)(3) states:

> No defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice.

In *Scruggs*, the Board held that this means the employer must prove "actual prejudice" caused by the employee's late notice. *Id.* at *7. The employer in *Scruggs* asserted that the failure to give notice was "in and of itself" a clear prejudice; however, the Board noted that if this were true, subsection 201(a)(3) serves no purpose. The employer also made a general claim that the late notice "prejudiced" its ability to investigate the claim without providing any facts detailing how it did so. The Board found this general assertion insufficient and held that the employer had not established prejudice. *Id*.

Here, Randstad also failed to show prejudice. It offered no evidence as to how the late notice might have obstructed its investigation. It obtained statements and affidavits from all interested parties, including Mr. Wilson. Mr. Wilson continued to work full duty without restrictions after his alleged injury, and Randstad introduced no evidence that his injury worsened while he did so. Mr. Wilson's only unauthorized treatment before giving notice, for which he is not seeking reimbursement, was the MRI.

Given the findings above, the Court holds that Mr. Wilson is likely to prove at trial that his late notice is not sufficient reason to deny his claim for benefits.

6

*Causation*

To prevail on this issue, Mr. Wilson must show that his shoulder tear was caused by a "specific incident or set of incidents, arising primarily out of and in the course and scope of employment" with Randstad. Tenn. Code Ann. § 50-6-102(14)(A). Further, he must prove causation "to a reasonable degree of medical certainty," through an expert medical opinion. *Id.*; Tenn. Code Ann. § 50-6-102(14)(D).

The facts conflict regarding the "specific incident" element, and Randstad made several points against causation. Mr. Wilson admitted that he did not inform anyone at Sonoco or Randstad that he suffered an injury until his supervisors approached him about it. According to Ms. Ingram's and Mr. Phelps's affidavits, he never informed them of a specific injury once they confronted him. Instead, he told Ms. Ingram that the injury occurred at a previous job. The incident report completed by Ms. Boles on July 9 states that the injury occurred gradually due to lifting boxes. In addition, none of the medical records mentions a specific work incident.

Mr. Wilson's history raises other concerns. He had a workers' compensation claim in 2009 for the same shoulder that left him with permanent restrictions. Dr. Collier's notes before the alleged injury state that one of Mr. Wilson's complaints was shoulder pain, although the records do not specify which shoulder. Finally, Dr. Collier's February and March 2021 notes clearly state that Mr. Wilson was working at a factory and was suffering from increased pain as a result. Mr. Wilson did not clarify these statements at the hearing, other than to admit in his deposition that he said he worked for other temporary employment agencies after his 2009 workers' compensation injuries, but he could not remember when.[3]

However, several points can also be made in Mr. Wilson's favor. He testified that, while he suffered from chronic pain in various body parts, including his left shoulder, before his injury, his left-shoulder pain did not limit his work, and he never sought specific treatment for it. However, he claimed his symptoms changed significantly after his injury. The fact that he worked full duty at Randstad for several weeks before his alleged injury tends to corroborate this statement. Mr. Wilson also explained that he did not initially report a work injury because of his concern, apparently legitimate, that he would lose his job.

The Court also finds it significant that in Mr. Wilson's recorded statement, taken only a few days after he gave notice, he told the adjuster that he first felt his shoulder pop when he and a co-worker completed a shift short-handed. This statement is consistent with his hearing testimony.

---

[3] The Court finds it curious that neither party elaborated on Mr. Wilson's employment and the difficulties he had at work immediately before he began working for Randstad.

His medical records also contain points that corroborate causation. While he suffered a work injury to his left shoulder in 2009, the MRI did not reveal a tear. His records after the alleged injury clearly show a complete tear without atrophy, which suggested an acute injury to Dr. Hutchison. In addition, none of Dr. Collier's records specifically mentions increased left-shoulder pain before Mr. Wilson began working at Randstad.

Finally, the Court finds that Mr. Wilson appeared candid and straightforward, and Randstad did not offer sufficient evidence to cause the Court to doubt Mr. Wilson's veracity. The Court cannot find, given the evidence before it, that Mr. Wilson's testimony as to his alleged injury lacked credibility.

In summary, although this issue is again close, the Court holds that Mr. Wilson provided sufficient facts to show he is likely to prove a "specific event or series of events" while working at Randstad that injured his left shoulder.

Mr. Wilson must, however, still prove causation by expert medical opinion. Dr. McBride, the authorized physician, did not address causation. Dr. Hutchison did. After first stating that if Mr. Wilson's history was correct, the tear "certainly could" have been caused by his employment. However, he later said that he was unable to address causation "to a reasonable degree of medical certainty" after being presented with information about Mr. Wilson's previous workers' compensation claim. Thus, Mr. Wilson did not show a likelihood of prevailing on causation through expert opinion.

However, that does not end the query. The Court must still consider Mr. Wilson's entitlement to a panel of orthopedists as recommended by Dr. McBride. Tennessee Code Annotated section 50-6-204(a)(3)(A)(i). The Appeals Board has long held that a lack of medical evidence regarding causation does not necessarily eliminate the employer's obligation to provide a physician panel. *Lewis* v. *Molly Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Apr. 20, 2016); *Hawes v. McLane Co., Inc.*, 2021 TN Wrk Comp. App. Bd. LEXIS 30, at *10 (Aug. 25, 2021).

In *Hawes*, the only medical evidence was from a non-doctor clinician, who gave an opinion that the employee's condition was not work-related. The Appeals Board distinguished the case from *Berdnik v. Fairfield Glade Com'ty Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-11 (May 18, 2017), where the only evidence from a doctor was that the employee's condition was not causally related to employment, leading the Appeals Board to deny the employee a panel. *Id*. Thus, the Appeals Board in *Hawes* held that a non-medical opinion against causation was not enough reason to deny the provision of a panel. *Id*.

As with *Hawes*, no doctor opinion exists in this case as to whether Mr. Wilson's

rotator cuff tear is or is not causally related to his employment with Randstad. Thus, the Court holds that Randstad must provide Mr. Wilson with a panel of orthopedists from which he may choose an authorized physician under Tennessee Code Annotated section 50-6-204(a)(3)(A)(i).

IT IS, THEREFORE, ORDERED THAT:

1. Randstad shall provide Mr. Wilson with a panel of orthopedists, from which he may select a physician to treat any injury he sustained to his left shoulder while working for Randstad.

2. This case is set for a Status Hearing on **September 26, 2022, at 9:00 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED on August 9, 2022.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Hearing
5. Mr. Wilson's Pre-Hearing Brief
6. Randstad's Witness and Exhibit List
7. Randstad's Pre-Hearing Brief

Exhibits:
1. Mr. Wilson's affidavit
2. The Jackson Clinic's medical record
3. West Tennessee Bone and Joint's medical record
4. Sports Orthopedic and Spine medical record
5. Randstad's collective exhibit of medical records
6. Affidavits of Tangie Barlow, Adriane Ingram, and Tony Phelps
7. First Report of Injury
8. Wage Statement
9. Notice of Denial
10. C-42
11. Recorded Statement
12. Documents from 2010 worker's compensation settlement
13. Mr. Wilson's deposition

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on August 9, 2022.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Jeffrey Boyd | | | X | jboyd@borenandboyd.com |
| Laurenn Disspayne | | | X | ldisspayne@manierherod.com |

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____  ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*